## Davis v. Davis.

*Marshall & Marshall,* for petitioner.

*Montooth Bros. & Buchanan, H. V. Blaxter* and *Weller, Wicks & Wallace,* contra.

EVANS, P. J.—At the above number and term on Aug. 11, 1894, Harry Davis, the libellant, was granted a divorce from Ona May Davis. The parties had lived in Pittsburgh as husband and wife for it does not appear how long. On March 4, 1894, the respondent left Pittsburgh and went to Mt. Clemens, Michigan, and apparently never regularly lived with her husband afterwards. She does allege some illicit relations, but not regular cohabitation as husband and wife.

On Jan. 18, 1929, the above respondent, Ona May Davis, filed a petition in this court, praying that the decree in divorce filed on Aug. 11, 1894, be opened and the petitioner allowed to defend. On March 11, 1929, Harry Davis filed his demurrer to the petition of Ona May Davis for the reason that "the averments contained in the petition do not set forth sufficient facts for opening the decree in divorce entered at the above number and term;

"Second. The petition to open the decree in divorce was not presented to the court until after the end of the term at which the decree was entered, and the court has lost jurisdiction over the subject-matter;

"Third. The term of the court at which the decree was entered having expired, the petition does not contain sufficient facts to warrant the granting of the relief prayed for;

"Fourth. The decree entered at the above number and term is *res adjudicata* of the matter set forth in the petition;

"Fifth. Petitioner has not in or by her petition shown any cause entitling her to the relief prayed for;

"Sixth. Petitioner is guilty of laches."

The rule that a decree or judgment of court will not be disturbed after the term at which the decree was entered has passed is not usually enforced in cases of divorce. If circumstances in regard to the notice and the conduct of the hearing are not regular, the courts will usually open the decree and give to the respondent an opportunity to be heard.

But this is a very extraordinary case. This divorce was granted more than thirty-four years before the petition of the respondent was presented. During that time the libellant and respondent were living apart, and during those thirty-four years the respondent never made any move to enforce her legal rights, as against her husband. The record in the divorce proceeding shows a return by Edward Lewis, deputy sheriff for Sheriff Richards, on April 14, 1894, under oath taken before John Bradley, prothonotary, that he served Ona May Davis, the respondent in the writ, on April 14, 1894, at Pittsburgh, Allegheny County, by delivering to her a true and attested copy of the within writ, and made known to her the contents thereof. Mr. Lewis is dead and was dead when Mrs. Davis presented her petition to the court. Mr. Lewis was well known as a public officer; not only as an upright man of integrity but also as an intelligent, careful and vigilant officer. For many years he was deputy sheriff; for many more years he was warden of the jail, and his reputation for integrity and for vigilance and care was such that those who knew him well would hesitate seriously to believe that he would either falsify a return or be deceived into making a false return. The petitioner denies that the writ was served on her.

In the testimony taken in the divorce proceeding, Phillip Demmell, a detective, connected at one time with the Police Department of the City of Pittsburgh, gave testimony which stated that Mrs. Davis on April 10, 1894, was in Cleveland all night, on the way to Pittsburgh, and she corroborates this in her petition. She does not deny that she came to Pittsburgh on that trip, nor that she was in Pittsburgh on the 14th day of April, of 1894, three days after she spent the night in Cleveland. She does state that when she stayed all night in Cleveland she was on her way to Pittsburgh. Phillip Demmell, in his testimony before the master in the divorce case, gave serious testimony against Mrs. Davis. Mrs. Davis in this petition presents an affidavit by Mr. Demmell making some reflection on one of the witnesses who testified in the divorce case. Whether that witness is living or not we do not know, but Mr. Demmell does not, in his affidavit, in any manner, contradict the testimony, and serious testimony, which he gave at the trial of the divorce case, and Mrs. Davis in her petition, in referring to the incident, says that she does not know whether she did or said what Mr. Demmell testified to in the divorce case; that she was too excited to know. Mr. Demmell testified that he saw one Edward P. Abbott and wife registered in the Forest City Hotel, and assigned to Room 34 on the register. He went to that room and he found Mrs. Davis and her daughter, thirteen years old, in bed in room 34 and Edward P. Abbott in a bed in an alcove connected with that room, and then testified to certain fondling acts on the part of Abbott and Mrs. Davis. As I

say, her answer to that is that she was too excited to know what she was doing.

The petitioner attaches to her petition quite a number of letters which she alleges were written to her while she was in Mt. Clemens, between Nov. 24, 1894 and Dec. 17, 1926, in which he sent her money. The letters which Davis wrote to her nearly all contained some amount of money, and while her letters to him are not enclosed it is evident from his letters that she was urging him to pay her money, but there is no indication that she ever indicated any desire to go back and live with him. But there is in his letter an assertion that he is sending her money in order that she can start a business in Mt. Clemens, so that she will be able to support herself and her daughter.

In the first few letters written by Davis, he expresses his great affection for her and states that he will do what he can for her in reason, but says nothing in any of his letters that would indicate that he was under any legal obligation that she has charged him with being; no legal obligation to furnish her with money. The first seven letters written by Davis to Mrs. Davis are addressed to "Dear May;" from the letter of Sept. 30, 1895, to and including the letter of Oct. 27, 1897, the letters are addressed to Mrs. May Davis; beginning with the letter of Feb. 11, 1902, the letters following that are all addressed to "Miss May Patterson," which was Mrs. Davis's maiden name, and the letters are all in two or three lines, stating in substance that money is enclosed.

On Oct. 27, 1897, Mr. Davis sent the respondent, in response to a telegram from her, $25. That was the last money forwarded by him to her until Feb. 11, 1902, when, in response to a request from her, he sent her $25, addressing her as "Miss May Patterson," and closing his letter with "I am, respectfully yours." His following letters were all addressed to "Miss May Patterson," and during the year 1902 he sent her altogether $50. From that time he sent her no money until Aug. 12, 1913, when he sent her $20. His next remittance was Oct. 3, 1918, when he sent her $50. On June 13, 1919, he sent her $40, in which he states to her, "You must not count on me." On Feb. 5, 1920, he sent her $40; on Oct. 29, 1920, he sent her $40; on Nov. 12, 1920, he sent her $40; on Oct. 3, 1923, he sent her $50; on Dec. 21, 1923, he sent her $60; on Nov. 27, 1925, he sent her $50; on April 8, 1926, he sent her $60; on Nov. 5, 1926, he sent her $60; on Dec. 7, 1926, he sent her $100. In another letter, not dated so far as the copy is concerned, he sent her $40, and that is the last.

For a period of thirty-two years he sent her $725; she, apparently, all the time urging him to send her money, knowing, as she says, that she was his legal wife and that he was responsible for her support. Yet she took no steps to compel him to support her.

In a letter from Davis's secretary in 1924 he had stated to her that Mr. Davis was out of the city with Mrs. Davis. Apparently that did not raise any suspicion in her mind that there was any break in her marital relations with him, for she says it never occurred to her that this Mrs. Davis was his wife, but supposed it was his mother. It seems to be a pertinent question to ask: what was it that occurred shortly before September, 1928, which caused her to come to Pittsburgh to investigate her marital relations with Mr. Davis? She does not specify. There was an important occurrence. Edward Lewis, the deputy sheriff who made his return under oath that on April 14, 1894, he had served the subpoena in divorce on the petitioner in this case, died on April 2, 1928.

Now, as we have suggested, the strict rule of refusing to open the judgment after the expiration of the term at which the judgment was entered is not enforced in the case of divorce, but here we have a case where the record of the sheriff's return is regular and the affidavit of the deputy sheriff returns a personal service, and more than thirty-four years afterwards, after that deputy sheriff is dead, after nobody is living who could possibly testify to the fact of the service on this respondent of the subpœna in divorce, this respondent asks this court to open the decree in divorce and let her answer the subpœna. If such a precedent as this were established there would not appear to be any stability of decrees in divorce.

I have referred to the testimony of Phillip Demmell as to what occurred in the Forest City Hotel in Cleveland on the night of March 11, 1894, as being very serious matter affecting Mrs. Davis. He testified that when he opened the door, Abbott came to the door partially undressed. When he was asked who the woman was in bed in the room he said it was his wife. When that question was doubted Demmell says: "I walked into Mrs. Davis's part of the room and looked at her and said to Abbott, 'I don't think this is your wife. I know this woman. It is Mrs. Davis, of Pittsburgh.' She said nothing to this." In her petition and answer to this she says she did not know what she said; she was too much excited. Very likely she was excited.

Comparing the allegations of this petition with the history of this case, we are of opinion that the decree in divorce ought not to be disturbed.

From William J. Aiken, Pittsburgh, Pa.